# Graeff and Wife *versus* DeTurk.

*Construction of Will.—Creation of Estates Tail.—Rule in Equity as to Power of Appointment among several Distributees.*

1. A testator devised land to a grandson "during his natural life, and after his decease to the heirs of his body, their heirs and assigns respectively, in such manner and shares as he may see fit to divide it among them, which he shall have full power to do as he pleases." He having devised the whole of the land to his two sons, save a small portion to the children of a daughter, one of them brought ejectment against one of the sons for her share as granddaughter of the first devisor, the grandson and original devisee, repudiating her devise: *Held,* That the grandson had under the original will the power to divide the land among the heirs of his body as he chose; that he exercised that power formally and legally, and that the appointment could not be set aside on the ground that it was illusory and unsubstantial.

2. The English equity rule, that where there is a power of appointment among several distributees, it cannot be legally exercised except by giving to each appointee a beneficial interest in the fund fairly proportioned to the amount for distribution, and that the appointment of a nominal share to a beneficiary is illusory and void; has never been adopted in Pennsylvania.

ERROR to the Common Pleas of *Berks county.*

This was an action of ejectment, by Moses K. Graeff and Sarah Ann Graeff, his wife, in right of the said Sarah Ann Graeff, against Daniel DeTurk, to recover the undivided one-eighth part of a tract of land, containing 130 acres and 148 perches, situate in Oley township, Berks county, to which the defendant pleaded not guilty, and issue.

On the trial a special verdict was found by the jury as follows:—

"We find that Martin Shenkel made his will, dated the 19th day of November, A. D. 1804, which was proved on the 11th day of May, A. D. 1805, devising to his grandson, Philip DeTurk, during his natural life, and after his decease, to the heirs of his body lawfully begotten, and to their heirs and assigns respectively, a messuage and tract of land (including the land in controversy in this action), on which the testator resided at the time his will was made, situate in the township of Oley and county of Berks, containing 311½ acres, strict measure, be the same more or less: to have and to hold the same to the said Philip DeTurk during his natural life, and, after his decease, to the heirs of his body lawfully begotten, and their heirs and assigns respectively for ever, in such manner and shares as the said Philip DeTurk may see fit to divide it among them, which he shall have full power to do as he pleases. That Philip DeTurk took possession of the tract of land devised by Martin Shenkel under his will, married in the year 1806, and died on the 5th day of

[Graeff and Wife. *v.* DeTurk.]

March, A. D. 1861. That Daniel DeTurk, the present defendant, was the eldest son of the said Philip DeTurk, and is now living. That Martin DeTurk, the second son of the said Philip DeTurk, died in February, A. D. 1850, leaving six children: Marks L., Lewis P., Esther, Martin, Rachel, and Levi DeTurk, who are all living. That Anna Hoch, the eldest daughter of the said Philip DeTurk, died twenty-five years ago, leaving three children, two of whom are surviving, and one of whom died in the said Philip DeTurk's lifetime, intestate, unmarried, and without issue. That Esther Yoder, the second daughter of the said Philip DeTurk, died in the year 1838, leaving four children, two of whom died intestate and without issue in the said Philip DeTurk's lifetime, but subsequently to the death of their mother, and two of whom still survive, to wit, Sarah Ann Graeff, the present plaintiff, wife of Moses K. Graeff, and Amelia Ehst, wife of William Ehst. That on the 17th day of May, A. D. 1843, the said Philip DeTurk made his last will, which was proved on the 28th day of March, A. D. 1861, by which he devised to the (then living) four children of his daughter Esther Yoder, 3 acres and 115 perches, part of the tract of land devised to the said Philip DeTurk by the said Martin Shenkel, being parcel marked 'D' on the draft annexed to the last-mentioned will, together with a legacy of $2000; that he also devised to the three children of his daughter Anna Hoch, 3 acres and 116 perches of the same larger tract devised by Martin Shenkel, together with a legacy of $2000, the share so devised as last mentioned, being parcel marked 'C' on the said draft; that he also devised to Daniel DeTurk 130 acres and 148 perches of the same larger tract, being parcel marked 'B' on the said draft; that he also devised to Martin DeTurk 190 acres and 141 perches of the same larger tract before mentioned; that the defendant, Daniel DeTurk, is in possession of the land now in controversy, consisting of the parcel of property devised to him by said Philip DeTurk as above recited, containing 130 acres and 148 perches; that the parcel of land devised by Martin Shenkel to Philip DeTurk, was capable of being divided into four farms, which could be availably occupied and used; that the parcel of land devised by Martin Shenkel to Philip DeTurk, was at the date of the execution of the will of the said Philip DeTurk, and at the time of his death (described in said Shenkel's will as containing 311½ acres), of the value of $38,937.50; that the portion of said tract of land devised by the said Philip DeTurk to Daniel DeTurk, containing 130 acres and 148 perches, was at the time of the execution of the said Philip DeTurk's will, and at the time of his death, of the value of $16,370.25; that the portion of the said tract of land devised by the said Philip DeTurk to Esther Yoder's heirs (containing 3 acres and 115 perches) was of the value at the time of the execution of the said.

[Graeff and Wife *v.* DeTurk.]

Philip DeTurk's will, and at the time of his death, of $464.84⅜; that at the same period of time, the value of the 3 acres and 116 perches, devised to the heirs of Anna Hoch, was $465.62½; and that at the same periods of time, the value of the 190 acres and 141 perches, devised to Martin DeTurk and his heirs, was $23,859.53⅛. And we do hereby make the said will of Martin Shenkel, and the said will of Philip DeTurk, a part of this special verdict, as fully as if the same were herein recited. And as we are ignorant in point of law on which side we ought, upon these facts, to find the issue, if upon the whole matter the court shall be of opinion that the issue is proved for the plaintiffs, we find for the plaintiffs accordingly, that they are entitled to recover the one full equal undivided eighth part of the land described in the writ issued by the said plaintiffs, and now in controversy; but if the court shall be of an opposite opinion, then we find in favour of the defendant."

On the 30th of August 1862, the court below (WOODWARD, P. J.) delivered the following opinion:—

"On the 19th day of November 1804, Martin Shenkel made his will, which was proved on the 11th of May 1805, and which contained the following devise: 'To my grandson Philip DeTurk, during his natural life, and after his decease, to the heirs of his body lawfully begotten, and their heirs and assigns respectively, a certain messuage, plantation, and tract of land whereon I now live, situate in Oley township, bounded, &c., containing 311½ acres, strict measure, be the same more or less. To have and to hold the said messuage, &c., unto my said grandson, Philip DeTurk, during his natural life, and after his decease, to the heirs of his body lawfully begotten, and their heirs and assigns respectively for ever, in such manner and shares as the said Philip DeTurk may see fit to divide it among them, which he shall have full power to do as he pleases.' Philip DeTurk took possession of the property under the will, married in the year 1806, and died on the 5th of March 1861. His legal representatives, at the time of his death, were his oldest son, Daniel DeTurk, the present defendant; the six children of Martin DeTurk, his second son, who died in 1850; two surviving children of his daughter Anna Hoch, who died twenty-five years ago, and two surviving children of his daughter Esther Yoder, who died in 1838. On the 17th of May 1843, Philip DeTurk made his will, which was proved on the 28th of March 1861, devising to the (then living) four children of his daughter Esther Yoder 3 acres and 115 perches of the land devised by Martin Shenkel, which the jury have appraised at $464.84⅜; devising to the (then living) three children of Anna Hoch 3 acres and 116 perches of the same land, which the jury have appraised at $465.62½; devising to Daniel DeTurk 130 acres and 148 perches of the same

8 WR.—34

[Graeff and Wife *v.* DeTurk.]

land, which the jury have appraised at $16,370.25; and devising to Martin DeTurk and his heirs 190 acres and 141 perches of the same land, which the jury have appraised at $23,859.53⅜. The purpart devised to Daniel DeTurk, containing 130 acres and 148 perches, is that which is now in controversy. The plaintiffs are one of the daughters of Mrs. Yoder and her husband. The appointment by Philip DeTurk is repudiated, and this ejectment is brought to recover the one undivided eighth part of this property, to which it is claimed Mrs. Graeff is entitled as one of the heirs of her grandfather, under the will of · his grandfather, Martin Shenkel. The general grounds upon which this cause is rested by the counsel for the plaintiffs are, that ,the devise to Philip DeTurk was of a life estate in this land; that a remainder in fee was limited to his children, which vested in them upon their birth; that the power granted to him in addition to his estate, was a power to part and divide, and not to create title; and that, for a variety of reasons, this power has not been duly and adequately exercised. If, upon the facts set out in the special verdict, it was necessary to ascertain the exact nature of the legal title of Philip DeTurk, under Martin Shenkel's will, leaving the question of power out of view, the court would probably be compelled to hold it to be an estate tail. In construing the devise, reliance is placed upon the use of the word 'respectively' superadded to the words 'heirs of his body.' It has been held in Pennsylvania, that distributive words following and qualifying apt words for the creation of estates tail, have the effect to reduce such estates to estates for life. Such was the effect of the use of the words 'as tenants in common and not as joint tenants' in Findley *v.* Riddle, 3 Binn. 139, and in Nebinger *v.* Upp, 13 S. & R. 65. But even where such terms are employed, these authorities are in conflict with the general current of the English cases, which would seem to recognise the doctrine that where there is a limitation in a will to 'heirs of the body,' superadded words importing that they are to take concurrently or distributively, are to be treated as repugnant to the words of limitation, and as such to be rejected: Doe d. Chandler *v.* Smith, 7 Durn & E. 532; Pierson *v.* Vickers, 5 East 548; Bennet *v.* Earl of Tankerville, 19 Ves. 170; Jesson *v.* Wrights, 2 Bligh 1. With the rule established in Guthrie's Appeal, 1 Wright 9, that estates tail are not within our Intestate Act, and that such estates must descend to the eldest son, courts will not unnecessarily construe any devise as creating such an estate. Still while we are bound by our own authorities to the extent to which they go, the use of such a qualifying word as 'respectively' added to words that aptly create a tenancy in tail, could not upon recognised principles, in the absence of direct precedent, be held sufficient to reduce the estate to one for life. Even in Guthrie's Appeal it

[Graeff and Wife v. DeTurk.]

was said by the Supreme Court that 'it has been ruled that in cases where the remainder has been limited to heirs of the body, a direction that they shall take distributively will not prevent the application of the rule in Shelly's Case, and this is because the presumption arising from the use of the word "heirs" is too strong to be rebutted by the repugnant provision for distribution.' It is not necessary in this case even to refer to the doctrine of approximation, or, as it is generally called, the *cy pres* doctrine, by which the general intent of a testator is said to be attained by a sacrifice of his particular intent. It is enough to say that a settled rule rejects the word relied on for repugnancy, and that no authority is shown to impugn the rule. While the question is probably of no present significance, our opinion is that, apart from the clause conferring a power upon Philip DeTurk, he took, under Martin Shenkel's will, an estate tail. While the devise was to Philip DeTurk and the heirs of his body, the land was to be divided among those heirs in such manner and shares as he should choose. There is no difficulty in ascertaining the intention of Martin Shenkel in this direction. It is objected that it was not the design to give the devisee authority to do more than make an *equal* distribution. But he did not say that. Taking the theory of the plaintiffs as sound, that the devise created a life estate, a direction for distribution, if it must be held to have required equal distribution, was simple supererogation, for this would have been effected by the law. We have merely to look to the plain obvious meaning of the language of the testator. No formal set of words is requisite to create or reserve a power. It may be created by deed or will, and it is sufficient that the intention be clearly declared. The creation, execution, and destruction of powers, all depend on the substantial intention of the parties; and they are construed equitably and liberally in furtherance of that intention: 4 Kent 319. While McKonkey's Appeal, 1 Harris 253, is probably of no value as an authority, as it was overruled in Pennock's Estate, 8 Harris 268, still the opinion of the court contains the expression of views that are pertinent to the present question. 'It is settled,' said the chief justice, 'that under a bequest for life, with a power over the residue, all take equal portions immediately under the will in case the power be not executed, and that an execution of it does no more than alter the allotments; but that all must take something, and take it, not from the donee of the power, but from the testator, as a particular bequest of so much to each. If the testator meant to say that Mrs. Pennock should have the personalty, with no other power over the surplus than to divide it equally, he meant to say nothing, for the Statute of Distributions would have said it for him. In a general sense, equality is said to be equity, but it is not universally so. There

[Graeff and Wife *v.* DeTurk.]

may be cases in which equality would not only be inexpedient but unjust. A son might forfeit his claim to it by becoming a spendthrift, a gambler, a drunkard, or a felon, while his brother may have been labouring to support the family and improve the estate.' There is nothing in the words employed by Martin Shenkel, which expressly or by necessary implication would look to an equal division of this property.

" It is objected, again, that there has been no due execution of this power. It is said that the will of Philip DeTurk contains no reference to the power. But would this be necessary ? Three classes of cases have been said to be sufficient demonstrations of an intention to execute a power : 1. Where there has been some reference to the *power* in the instrument of execution. 2. Where there has been a reference to the *property* which was the subject on which it was to be executed. 3. Where the instrument of execution would have no operation whatever, except as an execution of the power : Wetherill *v.* Wetherill, 6 Harris 265. But how can this question be important to these plaintiffs ? If, under the language of the whole devise to him, he took an estate in fee, his own will passed the land by virtue of his title. If he took an estate tail, and the appointment was void, the land descends to the eldest son as the heir at common law, and that son is the defendant. If he took a life estate, then he had no *interest* to pass under his will, and to make it operative at all, its operation must be attributed to the power. This point, after all, seems to be the only one which makes the inquiry into the nature of the estate created by the first devisee, a practical one. And in the situation of these parties, it is not seen how the plaintiffs can derive advantage from the result of such an inquiry.

" It is also objected against the appointment by Philip DeTurk that no authority was given to him to execute the power by will. But in what more appropriate way could it have been executed ? For his own life, at the least, he was to hold the land. He was not required to divide it before his death, and dividing it in contemplation of his death, there is no objection apparent to the mode which he adopted. When the mode in which a power is to be executed is not defined, it may be executed by deed or will, or simply by writing : 4 Kent 330.

" The remaining question is founded on the allegation that the division of the estate by Philip DeTurk was illusory, and therefore void. The plaintiffs invoke the aid of the doctrine which long prevailed in the English courts of equity, that where there was a power of appointment among several distributees, it was not sufficient that there should be a legal execution of the power by giving a part to each appointee; but that it should be a real and substantial part, and such as would give the appointee a beneficial interest in the fund, fairly and reasonably proportioned

to the whole amount for distribution. At law, where distribution was made to all the requisite appointees, if there was no control of the discretion of the donee of the power, any plan of division was sustained; but in equity the appointment of a nominal share to one of the beneficiaries was held to be illusory, and the proper court thereupon took upon itself the duty of dividing the fund equally among all the parties entitled to it. This rule of the English chancery is sought to be introduced as the ground for the decision of this cause. It is insisted that the devise by Philip DeTurk to the heirs of Mrs. Yoder was a fraudulent exercise of the power of distribution which Martin Shenkel had conferred upon him; that proportioned to the whole value of the estate, the share set out to these heirs was merely nominal, and that it is the duty of the court to set it aside.

"So far as this court have means of knowledge, this principle has never been applied, formally and authoritatively, in Pennsylvania. And in view of the difficulty and embarrassment which attended its enforcement while it existed in England, there would seem to be slight ground for encouragement of the attempt to naturalize it here. In Vandersee v. Aclom, 4 Ves. 771, the Master of the Rolls said: 'There is no question that has caused more doubt or difficulty in the mind of every judge who has sat in this court.' In Spencer v. Spencer, 5 Ves. 364, he said: 'I am not at liberty to depart from that rule which has created difficulty, and given so much uneasiness to every judge since it was first adopted as to illusory appointments. No rule has ever given me so much pain as that; and every judge has felt the difficulties arising from it.' Kemp v. Kemp, 5 Ves. 849, was argued in May 1795. The Master of the Rolls, in deciding it in March 1801, said: 'It is vain now to lament, as I have done in many cases, that this court did not follow the rule of law.' Finally, the statute of Wm. 4, ch. 46, entitled 'An act to alter and amend the law relating to illusory appointments,' was passed, declaring that no appointment should be impeached in equity on the ground that it is unsubstantial, illusory, or nominal. With the history before us of the rule in England, it would seem scarcely possible that it could be safely introduced into the jurisprudence of Pennsylvania. At any rate, we do not regard its introduction as the proper function of a Court of Common Pleas.

"In disposing of this case, we are of opinion that it was competent for Martin Shenkel to make any disposition of his land which he might choose; that he conferred upon Philip DeTurk the power to distribute it among the heirs of his body, in such shares and proportions as should seem expedient to himself; that this power was exercised by Philip DeTurk in a sufficiently formal and legal way; that it is a matter entirely indifferent what was the technical character of the estate vested in him,

inasmuch as the power of appointment was duly exercised; and that no principle is recognised in this state requiring the appointment to be set aside on the ground that it was illusory and unsubstantial.

"Judgment is entered on the special verdict for the defendant;" which was the error assigned here by the plaintiffs.

*John Banks, H. W. Smith,* and *William M. Baird,* for plaintiffs.

*J. G. Hawley, Samuel L. Young, J. S. Livergood,* and *Charles Dana,* for defendant.

The opinion of the court was delivered, May 6th 1863, by

READ, J.—The plaintiff Sarah Ann Graeff is a granddaughter of Philip DeTurk, and the defendant, Daniel DeTurk, is his eldest son; if therefore Philip DeTurk, under the will of his grandfather, took an estate tail in the premises, upon his death the title vested in the defendant, and if he took a fee simple, then he could dispose of it by will as he pleased, and in either case the plaintiff cannot recover. The only other construction is, that Philip DeTurk took an estate for life only, with a remainder "to the heirs of his body lawfully begotten, and their heirs and assigns respectively for ever;" and if the will had stopped here, then the contention on the part of the plaintiff would have been sustained. But following the word "for ever" are these words: "in such manner and shares as the said Philip DeTurk may see fit to divide it among them, which he shall have full power to do as he pleases;" and this power he has exercised and executed by his last will, in which he has given to the defendant the 130 acres and 148 perches (one-eighth of which is claimed by the plaintiff), being a part of the whole tract included in the above devise by Martin Shenkel, whilst he gave to the children of his daughter Esther Yoder, one of whom was the plaintiff, only 3 acres and 115 perches, part of the said whole tract.

There is no doubt that Philip DeTurk has executed the power intrusted to him, however harsh and cruel its execution may appear to those who regard females as well as males as entitled to the equal regard and affection of their parents. The only question is, had he the power to make such an unequal division as is presented to us? The words of the will of Martin Shenkel are large enough to authorize it, and the question is, is there any rule of law in Pennsylvania restraining him from so doing?

Such a distribution was always good at law, and we see no reason for introducing the equitable rule of an illusory appointment, which was found in England so unsatisfactory and so

[Graeff and Wife *v.* DeTurk.]

difficult to administer, that an act was passed, 1 Wm. 4, ch. 46, on the 16th July 1830, making the rule in equity the same as at law. And for this statute, restoring the common law rule, that great equity lawyer and judge, Lord St. Leonards, says he is responsible.

As the rule in equity has never been sanctioned by any decisions in this state (Ingraham *v.* Meade, 13 Legal Int. 372, per Justice Grier), we do not feel inclined to depart from a common law rule, but reject the exploded equitable English doctrine of illusory appointments.

The opinion of the learned judge in the court below is so full that we have not thought it necessary to repeat arguments which he has clothed in forcible and appropriate language.

Judgment affirmed.