## Grammes Estate

*Robert G. Kleckner*, for accountant.
*Donald L. LaBarre*, for petitioner.
*Ira T. Erdman*, for residuary legatees.

GEARHART, P. J., November 6, 1947.—This is the petition of J. Frank Grammes asking for a declaratory judgment under the Uniform Declaratory Judgments Act of June 18, 1923, P. L. 840, 12 PS §831, as amended. Petitioner is the surviving husband of Emma E. Grammes who died testate on May 15, 1947, leaving a last will and testament, undated, which was duly probated before the Register of Wills of Lehigh County; letters of administration c. t. a. were granted to Robert Kleckner, Esq. Petitioner requests an interpretation of the first clause of the will of his deceased wife, in order that his rights may be deter-

mined. The will of testatrix, which is a holographic will, is as follows:

"For Bob Kleckner

"First of all my husband whatever he may want to have or do.

"Divide my estate between—Louis LaBarre, my sister Anna M. Dietrich. Edward Cope, William Cope, Betty Cope, Lewis G. Grammes,

brother-in-law.

"One hundred dollars to Winifred Sheckler for kindness to me.

"All my clothes and hats to my sister, Anna M. Dietrich.

"My guns, with my husband's permission, to George A. Dietrich.

hundred

"To George Dietrich Jr. 500.00 dollars.

"To Roderick Dietrich 500.00 dollars.

"The rest to be divided between Humane Society, Day Nursery, and Shriners' Home for Crippled Children.

"(s) Emma E. Gammes."

Under the first clause of the will, which provides "First of all my husband whatever he may want to have or do", J. Frank Gammes claims in his petition, that he is entitled to all the personal and real property of his deceased wife, Emma E. Grammes, with the exception of the pecuniary legacies of $500 each to George Dietrich, Jr., and Roderick Dietrich, both minors, and of $100 to Winifred Sheckler. He has addressed a letter to the administrator c. t. a. making a claim for the entire estate, particularly the 209-acre farm located in Franklin Township, Carbon County, Pa.

From the averments contained in the petition and the letter addressed to the administrator, it is apparent that antagonistic claims exist among the various legatees under this will, and that the seeds of imminent

and inevitable litigation are here present. We are satisfied that this is a proper case to entertain a petition under the declaratory judgment, and that a decree in this case will serve to terminate the uncertainty or controversy which is present: See Declaratory Judgments Act of April 25, 1935, P. L. 72, sec. 1, as amended by the Act of May 26, 1943, P. L. 645, sec. 1, 12 PS §836; Prime's Petition, 335 Pa. 218; Lerch's Estate, 309 Pa. 23; Cryan's Estate, 301 Pa. 386.

All of the parties mentioned in the second paragraph of the will have joined in the prayer of the petition requesting that a declaratory judgment be entered, defining the rights of J. Frank Grammes. In addition, the three residuary legatees have been served with a copy of the petition, and one of them, namely, the Day Nursery, was represented at the hearing by Hon. Ira T. Erdman. In short, all parties having an interest in this case, have been duly served and made parties. No answer has been filed on behalf of any of the parties.

The determination of the question presented requires the interpretation of the holographic will of testatrix. As is the case in so many home-made wills, the intention of testatrix is not clearly expressed in the will. The will is contradictory and inconsistent in parts, as we shall hereinafter indicate. Our duty is to find the intent of testatrix from the words in the will. In doing so, it is necessary that we keep in mind certain well established principles with respect to the interpretation of wills. Thus, in Scott's Estate, 313 Pa. 155, 157, it was stated: " 'In the construction of wills the great general and controlling rule is that the intent of the testator shall prevail. And by his intent is meant his actual intent' ". And the intent of testator must be gathered from a reading of the whole will and not from certain clauses. Every sentence and word in a will must be considered in forming a judicial opinion upon it: See Fletcher v. Hoblitzell, 209 Pa. 337; Williamson's Estate, 302 Pa. 462.

Chief Justice Maxey, writing the opinion in Jackson's Estate, 337 Pa. 561, referred to a number of accredited canons which are applied in interpreting wills, and called attention to the following:

"(1) 'The law will impute to a testator's words such a meaning as, under all the circumstances, will conform to his probable intention and be most agreeable to reason and justice': Johnson v. Brasington, 156 N.Y. 181, 185, 50 N. E. 859. (2) 'In determining the testator's intention the court should place itself as nearly as possible in his position, and hence . . . should take into consideration the situation of the testator and the facts and circumstances surrounding him at the time the will was executed . . . , the state of the property devised', the amount and character of the property of the testator when he made his will (McGlathery's Est., 311 Pa. 351, 166 A. 886), and 'the testator's relation to the beneficiaries, their condition or necessities': 69 C. J. 63, sec. 1120."

"The 'pole star' long fixed for the guidance of courts in interpreting wills is a testator's intention": Prime's Petition, 335 Pa. 218, 222; Byrne's Estate, 320 Pa. 513, 522.

With these rules in mind, we approach the solution of the problem. Petitioner, J. Frank Grammes, is 76 years of age. He and his wife were on the best of terms. No children or grandchildren survived testatrix. It was brought out at the hearing that petitioner, J. Frank Grammes, is comfortably fixed financially, and as a matter of fact, all of the assets of the wife's estate were given to her by him sometime during their married life. In support of this proposition, and to show the circumstances surrounding testatrix at or about the time she made the will, there was offered in evidence a copy of the transfer of 24 Kline Township School District bonds at a face value of $1,000 each, made in 1941, upon which a gift tax was paid by the donor, J. Frank Grammes. Counsel for petitioner re-

cites these facts and argues that when these facts are borne in mind, the first sentence of the will, which provides "First of all my husband whatever he may want to have or do", is explainable and the intent becomes clear.

Thus it is argued that testatrix realized that her husband was a man of wealth, and in all probability, would neither desire nor need the money bequeathed to him by her. However, she wanted to be fair and just with him, and therefore desired to permit him to do with her estate what he chose, as she seems to indicate in the first sentence. Counsel further argues that testatrix, however, probably intended that in the event her husband did not dispose of all of her property, he should distribute the same in accordance with her intents as expressed in the will. In short, that which followed the first sentence was more in the nature of a suggestion to her husband than an outright gift to the parties mentioned. Thus, putting it in the power of the husband to select whatever he desired of the estate by using the words "whatever he may want to have or do", it would follow that if he desired "to have" all of the estate, there would be nothing to divide. And by like reasoning, so far as the charities were concerned, if the estate were divided "between" (she probably meant "among") the named legatees, there would be no remainder to be divided among the three named charities.

It seems to us that if the husband is to receive anything in this estate, he must receive it under the first sentence used by testatrix, and if he receives anything under that first sentence, it would seem that he may take all of the estate, for testatrix gave him the power to select. As we have indicated, he has already elected to take all of the estate except the pecuniary bequests. In short, if the parties named in the second paragraph of the will are to receive anything, we must ignore in its entirety the first sentence of testatrix's will. This

would run counter to the well-established rule that in the interpretation of wills, effect must be given, if possible, to every word and phrase employed by testator. No language of the will is to be ignored or treated as surplusage unless no other conclusion is reasonably possible: Moyer's Estate, 280 Pa. 131; Conner's Estate, 302 Pa. 534.

Assuming, for the purpose of argument, that no effect would be given to the first sentence, then, by the second sentence, testatrix has directed that her estate be divided among the named parties. As a matter of fact, if the estate were divided among the named parties, there could be no "rest to be divided between" the named charities. We recite this merely to show how confused testatrix was in expressing her intention.

It seems reasonably clear from this will that testatrix wanted her husband to have something and that her husband was her first concern. She starts her will with this statement: "First of all my husband", and then follows with "whatever he may want to have or do". Now, the meaning of the word "have", according to Webster's Standard Dictionary, as well as the commonly accepted meaning, is "to hold, own, possess, comprise". The meaning, therefore, of this clause would seem to be that petitioner could select and possess for himself any or all of the property of which decedent died possessed. Testatrix does not limit him to any amount, for she uses the word "whatever". In 3 Page on Wills §1067, p. 265, is found the following:

"If testator has made provision in his will giving to certain beneficiaries the right of making selection from testator's property or certain kinds thereof, in some definite order and practicable manner, full effect will be given thereto."

In Mizener's Estate, 262 Pa. 62, testator gave his daughter "thirty thousand dollars, par value of bonds". Decedent died possessed of over $300,000 worth of bonds; some of which were selling below par and others

above par. Decedent's wife was appointed guardian. The wife demanded that the executor deliver to her bonds having a market value of $30,620. The executor took the position that the average value of the bonds should be determined and that the widow should accept bonds having an average value. The Supreme Court determined that the guardian for the daughter had a right to select any $30,000 par value of bonds, regardless of their market value. By analogy, petitioner argues that he has a power of selection and under this power of selection, he can take all or any portion of the estate.

Again, it may be well reasoned that the first sentence of the will creates a power of appointment in the petitioner, together with general power of disposal. Thus, testatrix uses the word "do", and this implies some action on the part of her husband. Since he is not limited in his action to appoint to a specified individual or institution, the power must be regarded as a general one, giving him the power to dispose of the estate as he sees fit, including appointing the entire estate to himself: See Lyon et al. v. Alexander, 304 Pa. 288, 292. Said Mr. Justice Schaffer, writing the opinion for the Supreme Court in the latter case:

". . . where the power is a general one under which the donee may appoint to anyone, the testator has completely relinquished all dead hand dominion over the property and has placed it for all practical purposes as completely within the control of the donee of the power as though a fee had been created in him."

Express words and technical language are not necessary, so long as testator's intention to confer a power appears from the entire will: See Graeff and Wife v. DeTurk, 44 Pa. 527. The fact that testatrix went on to make other dispositions of the estate, under the circumstances becomes immaterial. 3 Page on Wills §1314, p. 848, states it very well as follows:

"Occasionally testator disposes of his property by will and by the same way confers a power upon the donee which, if exercised, will defeat one or more of such devises or legacies. It would seem that a power of this sort is no more objectionable than a power which is given by a will which makes no other disposition of testator's property. In the latter case the exercise of the power will prevent the heirs and next of kin from taking under the statutes of descent and distribution. In the former case, the exercise of the power will prevent the devisees and legatees from taking under the will. Accordingly, it is very generally held that such a power is valid, even though the provision by which the power is given speaks of its exercise as a revocation of the will."

Nor can it be doubted that under a general power of disposal, the donee may appoint to himself. In Beck's Appeal, 116 Pa. 547, an executor with very broad powers of disposal, appointed the entire estate to himself. On appeal this disposition of the estate by the executor was sustained. In Watts' Estate, 202 Pa. 85, an executor with broad powers of disposal, appointed to his children; on appeal the appointment by the executor was sustained. In Wilbur's Estate, 334 Pa. 45, the donee of the power of appointment exercised the power in favor of his creditors. On appeal this exercise was sustained. In McKallip's Estate, 324 Pa. 438, testatrix was about to sail. While on the boat she wrote the following codicil:

"I leave Ida Crum Campbell authority to change my will according to personal dictation—Boat sailing.
　　　　　　　　　"Margaret J. McKallip,
　　　　　　　　　　　"November 15, 1922."

Now another codicil appears:

"Boat not leaving—for 25 min. 4 o'clock. I want Ida C. Campbell to act as executrix with (Mellen's) Pittsburgh Trust Co. and Herman C. Grote and any

changes dictated in Will by Ida C. Campbell to be carried out—so long as my sister Martha F. Crow lives—she to receive Income so long as she lives—altho any property can be sold or my personal effects sold or distributed among my nieces as Ida C. Campbell and my sister Mattie arrange and agree to—After my sister's death the balance of the Will can be executed."

Martha J. Crow predeceased testatrix. Ida Campbell changed the terms of the will. The auditing judge affirmed the account according to Ida Campbell's directed schedule of distribution. On appeal, the account was confirmed.

All of the above cases illustrate the principle that when a testator grants a general power of disposal to a donee, he may dispose of it to whomsoever he pleases, including himself. We think that is what testatrix has done here. Certainly, if there is a dominant purpose to be found in her will, it is that the surviving husband comes first, and that as between the first clause, giving her husband "whatever he may want" and the power "to do", and the clauses which follow, under which clauses he would be stripped of everything, we adopt the interpretation which would favor the husband. Considering the whole will, it is impossible for us to find that testatrix did not mean to confer a benefit upon her husband. It might be argued that she did not intend that he should take the whole estate. The answer to that is that it was the words of testatrix herself that indicate that he was to have the right of disposal. It may well be that she had in mind that her husband would select only a portion of the estate and that he would divide the rest among the named parties or the named charities. However, this is mere speculation, and we have no right to speculate as against the reasonably plain meaning of the words used by testatrix in the opening sentence of her will. After all, the intent of testatrix must be found from the words she has used and not from some latent idea

that we might suppose she had in mind. This would be pure conjecture, and if courts were permitted to do that, it would be the court who would be making the will for testator. This, of course, is not the law on the subject: See Mr. Justice Stern's pertinent comments in Hogg's Estate, 329 Pa. 163, 169.