## Prime's Petition.

Argued April 21, 1939. Before KEPHART, C. J., SCHAFFER, MAXEY, LINN and STERN, JJ.

*Ezra P. Prentice,* with him *Charles P. Maxwell,* for appellant.

*Bernard Martin Goodman,* for appellee.

OPINION BY MR. JUSTICE MAXEY, May 25, 1939:

A certain lease of property for the term of "fifty years from January, 1905" was declared forfeited in October, 1934. This lease was executed by Eva B. Douglas, as owner, who died in 1915, leaving a will placing all of

her property in trust but providing for the vesting of interests in the remainder upon the expiration of the lease. In 1934 the trustee duly declared the lease forfeited and entered into the property's possession.

The question is: Did the *termination* of the lease by this act of the trustee fulfill the requirement for the vesting of interests in the remainder prescribed by the will, to wit: "the expiration of the present lease." The court below in a declaratory judgment proceeding held that it did not, and this appeal followed.

Paragraph 9 of the testatrix's will devised all her property to her executors and trustees, the net income thereof to be paid as follows: one-half to testatrix's son, Robert, and one-half to be used for the education of a granddaughter, Evalyn Dun Douglass, until she reaches the age of 25 years, when "any portion of the last-mentioned one-half then remaining in the hands of my executors and trustees . . . shall be paid over to her, and thereafter the whole of said last-mentioned one-half as collateral shall be paid over to her for her sole use and benefit."

The tenth paragraph provides as follows: "If my son Robert Graham Dun Douglass shall be living upon the expiration of the present lease of my real property at Easton, Pennsylvania to Evan Dalrymple, then and in such event, I give, devise and bequeath to my said son Robert Graham Dun Douglass two-thirds of all the real property of which I may die seized or possessed, and the remaining one-third to my granddaughter Evalyn Dun Douglass, provided she be then living. . . . If my said granddaughter Evalyn Dun Douglass shall die before expiration of above-mentioned lease, and shall leave no issue her surviving, then upon the death of my said son Robert Graham Dun Douglass, I give, devise and bequeath to such of his issue as shall survive him all the real property of which I may die seized or possessed. . . . And in the event of the death of both my said son Robert Graham Dun Douglass, and my

said granddaughter Evalyn Dun Douglass, prior to the expiration of aforesaid lease to Evan Dalrymple, without leaving them, or either of them, surviving any issue, then, and in that case I give, devise and bequeath all my property, real, personal and mixed and wheresoever situate, herein devised and bequeathed to their issue, to Lillie Day Embree, . . . and to Grace Day Brady . . ."

Surviving Eva B. Douglass are her son, Robert Graham Dun Douglas, her granddaughter, Evalyn Dun Douglass Prime, and Lillie Day Embree. Grace Day Brady pre-deceased Eva B. Douglass, January, 1912. Robert Graham Dun Douglas, the son, is married but has no issue. He has adopted two children, however, Diana Mary Douglas, and Robert Gordon Douglas. Evalyn Dun Douglass Prime, the granddaughter, is married and has two issue of the marriage, Eve Douglass Prime and William Gardner Prime.

Between Robert Graham Dun Douglas and Evalyn Dun Douglass Prime controversy has arisen as to their rights under the will. Robert contends that the trust set up in the will of Eva is invalid and in any event has terminated, and that he is at present owner in fee of a two-thirds interest in the property. Evalyn maintains that the trust is valid and subsisting.

The following three questions were presented to the court below and answered in the negative. On this appeal the only question presented is the third one.

"(1) Whether the provisions of the will, establishing a trust, are so inconsistent as to render the will ineffectual and the trust invalid;

"(2) Whether the trust established by the will of Eva B. Douglass is void as a violation of the rule against perpetuities;

"(3) Whether the trust, if validly settled, terminated by the default of the lessee and the action of the trustee declaring the lease null."

It is obvious that whether the phrases "expiration of lease" and "termination of lease" mean exactly the same thing depends entirely on the circumstances which occasioned their use. Webster's New International Dictionary defines "expiration" as "termination or end" and defines "termination" as "that which ends." The testatrix might have used with verbal accuracy either word in the now questioned clauses of her will, and we would still have before us the problem whether she meant the trust to come to an end when the lease had run its full course of 50 years from January 1, 1905, or had come to an end by the lessee's breach of its covenants.

The "pole star" long fixed for the guidance of courts in interpreting wills is a testator's intention. Chief Justice FULLER, in writing the opinion for the Supreme Court of the United States in *Y. W. C. H. v. French,* 187 U. S. 401, declared that "the intention of a testator expressed in his will, or clearly deducible therefrom, must prevail if consistent with the rules of law." Mr. Justice DREW, in writing the opinion for this court in *Pollock's Est.,* 306 Pa. 301, 313, 159 A. 555, cited with approval the following from *Stewart's Est.,* 253 Pa. 277, 98 A. 569: "The cardinal principle of testamentary construction is that the intention of the testator is to prevail, so far as it is disclosed by the language of the will." In the case of *Johnson v. Brasington,* 156 N. Y. 181, 185, 50 N. E. 859, the Court of Appeals of New York held: "When [a testator] has expressed himself in ambiguous or doubtful language, the law will impute to his words such a meaning as, under all the circumstances, will conform to his probable intention and be *most agreeable to reason and justice* [italics supplied]." In 69 C. J., page 63, section 1120, there is laid down this principle: "In determining the testator's intention the court should place itself as nearly as possible in his position, and hence, . . . should take into consideration the situation of the testator and the facts

and circumstances surrounding him at the time the will was executed, . . . the state of the property devised," the amount and character of the property of the testator when he made his will (*McGlathery's Est.,* 311 Pa. 351, 166 A. 886) and *"the testator's relation to the beneficiaries, their condition or necessities* [italics supplied]."

We cannot assume that when the testatrix made her will, she had any reason to believe that the lease in question would be terminated before it had run its allotted course. Up to the time the will was made in 1909, the lessee, it must be presumed, had faithfully performed his covenants and certainly the lessor could not have contemplated that 25 years later the lease would be breached and a forfeiture declared. It is clear to us that when the testatrix employed in her will the phrase "expiration of the present lease of my real property in Easton," she had firmly in her mind the year *1955, when according to the lease's own provisions,* it would come to an end. Had the testatrix desired an earlier termination of the trust she created, she could easily have so provided. Obviously, she did not intend that the trust whose creation she carefully provided for by will in 1909 and which was to come into legal being at the moment of her death (which occurred October 18, 1915) should last *either* one day *or* two days *or* any other period short of *50* years from January 1, 1905, as the *vicissitudes of a tenancy might determine.* An individual who creates a trust normally chooses to have its lifetime fixed by his own resolve and not by some happening over which he will have no control and which will bear no relation whatsoever to the trust's raison d'etre.

The court below aptly said: "The testatrix contemplated and intended a fixed and not a variable period of time. It is clear that the testatrix at the time the will was written would not have desired that the trust terminate before Evalyn had attained the age of 25 years.

Yet, had the testatrix died shortly after executing the will and had Dalrymple then defaulted the trust would have been terminated almost immediately, before the education of Evalyn had been completed, if the words 'expiration of the lease' meant any termination of the lease. At the same time it is evident that the testatrix desired Evalyn to enjoy one-half of the income from the trust either for the period of her life or if she and Robert lived that long until the expiration of the lease. Can it reasonably be assumed that the testatrix intended the period during which Evalyn should enjoy one-half of the income of the trust to depend upon the faithful performance of a lessee, a stranger to the estate? . . . In the context of a thoughtful and solemn devise of property the court can only conclude that the testatrix in measuring time by the duration of a lease contemplated the full period of the agreed term of the lease, intending, as testators habitually intend, that the efflux of time and the survival of issue, and not the irrelevant and self-interested act of a stranger, should determine the ultimate disposition of her estate."

The decree is affirmed at appellant's cost.