## WARREN SERVICE CORPORATION v. COMMISSIONER OF INTERNAL REVENUE.
### No. 204.

Circuit Court of Appeals, Second Circuit.
March 25, 1940.

For opinion below, see 39 B.T.A. 856.

Robert E. Coulson, James K. Polk, and Talbert W. Sprague, all of New York City, for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Maurice J. Mahoney, Sp. Assts. to Atty. Gen., for respondent.

Before SWAN, AUGUSTUS N. HAND, and PATTERSON, Circuit Judges.

SWAN, Circuit Judge.

In August 1926 Warren Service Corporation, as lessor, entered into an agreement

of lease with Warren-Nash Motor Corporation, as lessee, by the terms of which the lessor was to acquire certain real estate, erect thereon a building of specialized design and lease the premises for a fifteen year term at an average annual net rental of $125,000. The land cost $300,000 and the cost of erecting the building was nearly $800,000 more. The taxpayer would not have made this investment had it not previously obtained the commitment of Warren-Nash Motor Corporation to pay a relatively high rental over a long period, as embodied in the lease. The amount of net rental that could have been obtained in 1926 from another tenant was not more than $80,000 per year. The lease provided that the lessee should pay to the lessor $125,000, as security for the lessee's performance of its obligations, and that the lessor should have unrestricted use of the said sum and should repay it when the lease expired on August 1, 1941, if the lessee had faithfully performed its obligations, or having defaulted therein had cured such default. This sum was duly paid to the lessor in 1926 and was used by it in constructing the building upon the leased premises. When the lease was made the Warren-Nash Motor Corporation was a large and successful distributor of Nash automobiles, but in 1929 it began to lose money and in 1933 it was notified by Nash Motor Company that its distributor franchise would be terminated unless its operating expenses were reduced. Thereafter, on May 1, 1933, it was agreed between the lessor and the lessee that the lease should be forthwith cancelled and the lessee's interest in the security payment of $125,000 should be released, provided the taxpayer would hold such sum for the protection of the holders of the taxpayer's 6 per cent. secured notes until they should have been paid in full. The net rentals received by the taxpayer prior to cancellation of the lease aggregated about $894,000. On the date the lease was canceled the property was relet for a gross annual rental of $30,000, which was later increased to $40,000 for a five year term ending October 1, 1942. These rentals were the highest then obtainable for the property. The land and building are still owned by the taxpayer.

In its income tax return for 1933 the taxpayer included as income $85,910.65, representing the present worth at December 31, 1933, of the taxpayer's released obligation to pay $125,000 to the lessee on August 1, 1941. The commissioner treated the entire amount of $125,000 as income to the taxpayer in 1933. This resulted in a deficiency tax of $4,649.24 which the Board has affirmed.

■ ■ Although the $125,000 was received by the lessor in 1926 it was not income in that year, since the lessor was under obligation to repay it in 1941, unless in the meantime it should be appropriated to make good a default by the lessee. See Virginia Iron, Coal & Coke Co. v. Commissioner, 4 Cir., 99 F.2d 919, certiorari denied 307 U.S. 630, 59 S.Ct. 833, 83 L.Ed. 1513. The Board held that the cancellation of that obligation was income to the taxpayer in 1933. Assuming arguendo that this be true, the taxpayer contends that it sustained a loss by reason of the cancellation of the lease which more than offsets such income. It urges that it surrendered a contractual right to receive annual rentals far in excess of any sum for which it has been able to relet the premises. But this does not establish a deductible loss in 1933; it shows merely a diminution of expected income during that year and subsequent years. The taxpayer has sustained no loss of property in the income-tax sense. The land and building were and still are owned by the taxpayer and they have produced income. The difference between the income actually received and the income the taxpayer had expected to receive is not a deductible loss. What has been lost is merely prospective income. See Josey v. Commissioner, 10 Cir., 104 F.2d 453, 455. If the case of Commissioner v. Langwell Real Estate Corp., 7 Cir., 47 F.2d 841, is to be read as supporting the taxpayer's contention, we must respectfully decline to follow it, as did the Board.

■ ■ The taxpayer further argues that of the sum of nearly $1,100,000 expended in acquiring the land and constructing the building thereon, at least $300,000 should be deemed an investment in the lease, because the market value of the land and building was never more than $800,000 and no other tenant in 1926 would have paid more than an annual rental of $80,000. The Board made no finding that any part of the sum expended by the taxpayer was invested in the lease and the evidence would not have justified such a finding. Nothing was set up on the books of the taxpayer as an investment in the lease. Depreciation on the full cost of the building was taken at the rate of 2½ per cent. in the taxpayer's

return for 1933. The evidence shows merely that the taxpayer was willing in 1926 to pay an excessive price for the land and building because it expected to receive a high rental for a period of fifteen years. It is elementary that the difference between the price paid for property and its market value in a later year affords no basis for determining a gain or loss while the taxpayer still retains ownership of the property.

It is apparent from the foregoing discussion that no loss was sustained in the year 1933 which may be set off against income received in that year. The remaining question is how much income was received by reason of the taxpayer's release from its obligation to repay $125,000 in 1941 if the lessee was not then in default under the lease. The sum received in 1926 as security for the lessee's performance was, by specific agreement, available for the lessor's general use and was not to bear interest. The value of a release of an obligation to pay $125,000 in 1941, without interest, is obviously less than the value of the release of a debt for like amount presently due, or of an obligation to pay the sum in 1941 with interest. See Chesapeake & Ohio R. Co. v. Kelly, 241 U.S. 485, 489, 36 S.Ct. 630, 632, 60 L.Ed. 1117, L.R.A.1917F, 367, where it is said: "It is self-evident that a given sum of money in hand is worth more than the like sum of money payable in the future." See also Hollwedel v. Duffy, Mott Co., 263 N.Y. 95, 188 N.E. 266, 90 A.L.R. 1312. The present case is to be distinguished from a situation where the deposit of money as collateral security is held in trust by the lessor without the privilege of using it. It must also be differentiated from a situation where the lessor is to pay the lessee interest on the deposited sum, as in the case relied upon by the Board. Commissioner v. Langwell Real Estate Corp., 7 Cir., 47 F.2d 841. In such a case the present worth of a release from an obligation to pay $125,000 in eight years is presumably the face amount of the obligation; the value to the lessor of the use of the money in the interim is offset by the obligation to pay interest during the same period. But in the case at bar the lessor was to have the free use of the money until 1941. So the value of the release received in 1933 was the present worth of $125,000 payable in 1941.

In its 1933 return the taxpayer included as income $85,910.65 to represent the present worth of the released obligation. The Board did not, however, make a finding that this figure represented the correct present worth. The argument and briefs upon appeal have not discussed this point, but it was definitely presented to the Board by the taxpayer's petition and the commissioner's answer and it is raised in this court by the petitioner's assignment that the Board erred in holding that the taxpayer derived taxable income in the amount of $125,000 upon the cancellation of the lease. We think the Board's order must be reversed and the cause remanded with directions to determine the tax deficiency, if any, upon the basis of finding the present worth in 1933 of an obligation to pay $125,-000 on August 1, 1941 without interest.

It is so ordered.