RICHMAN et al. v. JORAY CORP.

No. 6103.

United States Court of Appeals
Fourth Circuit.

Argued June 27, 1950.

Decided August 3, 1950.

John W. Thomas, Jr., Columbia, S. C. (Pinckney L. Cain and Thomas, Cain & Lumpkin, all of Columbia, S. C., on the brief), for appellants.

Henry H. Edens, Columbia, S. C. (Henry Hammer, Columbia, S. C., on the brief), for appellee.

Before PARKER and SOPER Circuit Judges, and GILLIAM, District Judge.

SOPER, Circuit Judge.

This action was instituted by the Joray Corporation, organized under the laws of New Jersey, against Harry Richman of Illinois, and the Capitol Amusement Company, a South Carolina corporation, to recover the sum of $7930 which the Joray Corporation claimed to be the balance due it from the sum of $10,000 deposited by it for the performance of its obligations as lessee of a bowling alley and building in Columbia, South Carolina, belonging to Richman and the Amusement Company. The defendants, hereinafter referred to as landlord or lessor, made answer denying the claim and filed a counter-claim for damages to. the property and loss of equipment beyond ordinary wear and tear. The case was tried before the District Judge without a jury and resulted in a verdict for plaintiff in the sum claimed less $200 for damages to the premises, and the defendants have appealed on the ground that the property was security not only for arrearages of rent due and damages incurred on June 30, 1949, when the tenant surrendered the premises to the landlord, but also for any loss of rental which the landlord might suffer during the balance of the term of the lease.

The parties entered into the agreement of lease on September 15, 1944 for a term commencing October 1, 1944 and ending March 31, 1954, at an annual rental of $12,420 payable in equal monthly installments in advance on the first day of each month. The tenant deposited $10,000 with the landlord in accordance with paragraph 7 of the lease as follows:

"7. The tenant has this day deposited with the landlord the sum of Ten Thousand ($10,000.00) dollars as security for the faithful performance by the tenant of all of the terms and conditions, which it has undertaken to perform, which sum shall be returned to tenant only after the time fixed at the commencement of this agreement as the expiration of the term herein (notwithstanding this lease may be sooner terminated) provided the tenant has fully and faithfully carried out all of the terms, covenants and conditions on its part to be performed. * * *"

The lease also made the following provisions relating to the rights of the landlord if the premises should become vacant or if the tenant should default in the performance of its obligations under the lease or if certain other contingencies should occur:

"19. That if said premises or any part thereof, shall become vacant during said term; or should the tenant be evicted by summary proceedings or otherwise, the landlord or their representatives may re-enter the same either by force or otherwise, without being liable for prosecution therefor; and re-let the said premises or portions thereof from time to time as opportunity may offer and as the landlord may deem expedient, as the agent of the said tenant and receive the rent thereof; applying the same, first to the payment of such expenses as they may be put to in re-entering and then to the payment of the rent due by these presents; the balance (if any) to be paid over to the tenant who shall remain liable for any deficiency; and any deposit given to the landlord by the tenant as security for the faithful performance of the terms and conditions of this lease, may be retained by the landlord until the time originally fixed as the expiration of the term."

"24. It is expressly understood and agreed that in case the demised premises, or any part thereof, shall be deserted or va-

cated, or if default be made in the payment of the rent or any part thereof as herein specified, or if, without the consent of the landlord, the tenant shall sell, assign or mortgage this lease or if default be made in the performance of any of the covenants and agreements in this lease contained on the part of the tenant to be kept and performed, or if the tenant shall fail to comply with any of the statutes, ordinances, rules, orders, regulations and requirements of the Federal, State and Municipal Government or of any and all their departments and bureaus applicable to said premises, or hereafter established as herein provided, or if the tenant shall file a petition in bankruptcy or be adjudicated a bankrupt or make an assignment for the benefit of creditors or take advantage of any provision of the insolvency act, the landlord, may if they so elect, at any time thereafter terminate this lease and the term thereof shall terminate, expire and come to an end on the date fixed in such notice as if said date were the date originally fixed in this lease for the termination or expiration thereof."

The lessee entered into possession under the lease and paid the stipulated rental for a period of more than three years. In the spring of 1948 the volume of business was reduced by the curtailment in size of the army post at Fort Jackson, South Carolina, and at the request of the tenant, the parties agreed that the rent should be reduced in the sum of $300 per month for the months of June, July, August and September, 1948; but it was expressly provided that the amount of the reduction should be made up on or before the expiration of the term of the lease.

The business continued to be unprofitable in 1949 and the plaintiff fell into arrears for rent in the sum of $2070 for the months of May and June. The tenant, finding itself unable to meet the obligations of the lease, again sought a reduction in rent. Negotiations between the parties ensued and finally on June 30, 1949, the defendants entered into a written agreement of settlement. Reference was made therein to the term of the original lease, the amount of the rental, the deposit of $10,000 by the tenant as security for the performance of its

obligations, the breach by the tenant of the conditions of the lease, and the right of the landlord if it should so elect to terminate the lease in case of any default by the tenant; and in view of these considerations it was mutually agreed between the parties as follows:

"1. That the lease agreement hereinabove referred to dated the 15th day of September, 1944, be and the same is hereby cancelled *in toto* effective the 30th day of June, 1949, except as hereinafter provided in paragraphs two (2) and three (3), and the tenant does hereby give, grant and convey unto the landlord all of his right and interest to possession of the premises located at the northwest corner of Gervais and Marion Streets in the City of Columbia, County of Richland and State of South Carolina together, with the bowling alleys and all other articles of personal property and equipment presently located in said building.

"2. The tenant does hereby release the landlord from any and all claims, demands and suits of any kind or nature, except any and all claims which it now has or may hereafter have in or to the ten thousand and 00/100 ($10,000.00) dollars security deposit being held by the landlord.

"3. It is specifically agreed that the landlord does not release the tenant from any and all claims, demands or suits of any nature whatsoever, and in particular from any and all claims, suits or demands arising out of the breach of the lease agreement dated September 15, 1944, and hereinabove referred to."

In pursuance of this agreement of settlement the landlord took possession of the property, kept the business in operation, and advertised the place for sale or lease, and was finally able on September 12, 1949 to secure a new tenant at the annual rental of $10,000.

The contentions of the lessee under these circumstances are that by the agreement of settlement the parties expressly cancelled the lease *in toto,* and it thereby came to an end; and that under the law of South Carolina, as laid down in Simon v. Kirkpatrick, 141 S.C. 251, 262, 139 S.E. 614, 54 A.L.R. 1348, the termination of a lease

does not absolve the lessee from obligations incurred up to the date of termination, but it does absolve him from future obligations unless the lease otherwise provides. The lessee points out that it was not evicted from the premises but surrendered possession voluntarily, and that the agreement expressly provided that the tenant did not release the landlord from any claim which it then had or might thereafter have to the deposit of $10,000 held by the landlord. Further it is said that the agreement makes no reference to the right of the landlord under paragraph 19 of the lease to re-enter and re-let the premises in certain contingencies for the benefit of the tenant and apply the security to any deficiency of rent, but seems rather to have been made under paragraph 24 of the lease which gives the landlord the right under certain contingencies to terminate the lease and cause the term thereof to expire on the date of termination as if that date were the date fixed in the lease for the expiration thereof. Hence it is argued that the District Judge was right in holding that the landlord had no claim on the deposit for any losses suffered by him after June 30, 1949, but must return the money less the arrearages of rent then due and less the amount of the damages to the property which occurred during the tenancy.

We do not think that this position is tenable. In the first place it is noteworthy that the lease is taken out of the general rule, that the termination of a lease absolves the lessee from future obligations thereof, by the explicit provision in Section 7 of the lease that the deposit shall be returned to the tenant only from the time fixed in the lease for the expiration thereof, notwithstanding that the lease might be sooner terminated, and by the provisions of Section 19 that in case of eviction and re-entry, the landlord may re-let the premises at the risk of the tenant and retain the deposit as security until the time fixed for the expiration of the term. A like interpretation is given to a lease of similar import in Re Homann, 2 Cir., 45 F.2d 481.

Second, it is significant that the agreement of settlement does not provide that the tenant is entitled to the immediate return of the deposit less arrearages of rent and damages, but only that the tenant does not release any claim "which it now has or may hereafter have in or to the $10,000 security deposit being held by the landlord," thus indicating that the tenant's right to the deposit may be affected by subsequent events.

Third it is true that the relationship of landlord and tenant is terminated by the agreement of settlement and thereby the tenant is relieved of its obligation to make monthly payments of rent, and the burden of handling the property and minimizing the loss is imposed upon the landlord. But it is perfectly clear that the landlord does not surrender his rights under the lease to compensation for damages caused by the defaults of the tenant. On the contrary it is specifically agreed that the landlord does not release the tenant from any claims of any nature whatsoever arising out of the breach of the lease. The unavoidable conclusion is that while the parties desired to put an end to the relationship of landlord and tenant, and to that extent cancelled the lease, they otherwise kept alive the obligations of the lease by the exceptions to total cancellation contained in paragraphs 2 and 3 of the agreement of settlement.

The rights of the landlord in case of default on the part of the tenant are clearly set forth in paragraphs 7, 19 and 24 of the lease. In such event the landlord has the right to terminate the lease, and also to evict the tenant, re-enter and re-let the premises as the agent of the tenant, and charge the tenant with any expense of re-entry and deficiency in the rent. In the instant case the parties avoided formal notice of termination by the landlord under paragraph 24 as well as formal eviction and re-entry under paragraph 19 of the lease. They substituted therefor a mutual agreement of settlement by which the lease was terminated and possession of the premises was surrendered to the landlord; and each party reserved substantial rights—the tenant, the right to assert at that time or in the future any available claim to the deposit, and the landlord to hold the tenant for any loss arising from the tenant's failure to carry out the terms of the lease. Nothing in the agreement of settlement warrants the inference that the landlord gave up the

rights conferred upon him by paragraphs 7, 19 and 24 of the lease in the event of the failure of the tenant to perform its obligations thereunder.

The right of the landlord to make use of the security provided in Section 7 of the lease is not confined to the contingencies described in Section 19 of the lease. It is intended to protect the landlord in case of any defaults by the tenant, whether they are followed by forceful eviction or voluntary surrender of possession by the tenant. See Simon v. Kirkpatrick, 141 S.C. 251, 260-261, 139 S.E. 614, 617, 54 A.L.R. 1348, where it is said:

"Eviction and re-entry by the lessor are not the only methods of terminating a lease —an estate for years. It may be determined by the expiration of the term, by the surrender of the term by the lessee with the consent of the lessor, by a merger of the term in the fee, or upon the breach by the lessee of certain covenants or stipulations in the lease, as upon the death of a certain person, or the lessee's insolvency or the nonpayment of rent and many other causes; in any of which last-named events the lessor has the right upon notice to terminate the lease. See 1 Tiffany R.P. § 52."

■■ It follows that the judgment below which restricts the application of the security to past defaults cannot be justified. On the other hand it is not necessary to defer the final settlement between the parties until the date originally fixed for the expiration of the term of the lease. The present suit is not premature as the lessor contends. It is the rule in South Carolina that when a lessee declines to perform his contract, a cause of action immediately arises in favor of the lessor for full damages, present and prospective, which were the necessary and direct result of the breach; and the measure of damages is the difference between the rent fixed in the lease and the rental value of the premises for the entire term at the time of the breach, together with such special damages as may have resulted from the breach. See Simon v. Kirkpatrick, 141 S.C. 251, 259, 139 S.E. 614, 54 A.L.R. 1348. The case must therefore be sent back to the District Court for further proceedings in order that the court may apply this rule and ascertain the extent of the damages to which the defendants have been subjected, and render judgment accordingly; and to this end such amendments of the claim and counterclaim may be made as will enable the court to dispose of the entire controversy between the parties.

■ It should be added that the District Judge was of the opinion that the agreement of settlement was ambiguous in its terms, and therefore in interpreting the agreement, he took into consideration certain testimony relating to the negotiations between the parties which preceded the execution of the contract. The testimony was conflicting. The defendants offered testimony tending to show the landlord was willing to waive all claim to the security in its hands after deducting damages already incurred, while the testimony of the landlord indicated that it did not intend to waive any defaults but rather to retain control of the security until the entire loss was ascertained. We do not find it necessary to resolve this conflict since in our view the contract is not ambiguous but should be given the interpretation hereinbefore set out. See White v. White, 210 S.C. 336, 42 S.E.2d 537.

Reversed and remanded.