BRADFORD HOTEL OPERATING CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 51840.    Filed June 6, 1956.

*Phillip J. Nexon, Esq.*, and *David H. Greenberg, Esq.*, for the petitioner.

*Joseph Landis, Esq.*, for the respondent.

MULRONEY, *Judge:* The respondent determined deficiencies in petitioner's income tax for the fiscal years ended August 31, 1948, 1949, and 1950, in the amounts of $20,132.95, $10,269.24, and $17,004.65, respectively. All issues with respect to 1948 and 1949, and certain issues with respect to 1950, have been settled. The only issue for decision is the amount of income petitioner-lessor realized in January 1950 when a lease was canceled by mutual agreement of petitioner and lessee, and petitioner was released from an obligation to repay to the lessee $185,000 of a $250,000 deposit lessee had made for the faithful performance of a 35-year lease.

Petitioner, a corporation, together with its subsidiary, Oceanside Hotel, Inc., filed its consolidated income tax returns for the years in question with the collector of internal revenue for the district of Massachusetts. The stipulation of facts and the exhibits annexed thereto and the supplemental stipulation of facts show the following:

On December 20, 1946, petitioner, as landlord, entered into an indenture of lease, with Blossom Operating Co., Inc., as tenant, whereby the tenant leased landlord's hotel in Boston, together with equipment, furniture, and fixtures, for a term of 35 years "commencing at five (5) P. M. on the first day of January, 1947 and ending at five (5) P. M. on the first day of January, 1982, unless sooner terminated as hereinafter provided." The lease provided for certain rights of termination by either party in case of damage by fire or appropriation in condemnation proceedings. The lease granted the tenant the right to extend the lease for 7 years upon proper notice. Clause 4 of the lease provided for an annual rental of $300,000, payable in monthly installments of $25,000. The lease instrument contains several pages of covenants by tenant, wherein tenant agrees to numerous conditions with respect to its operation of the leased hotel, and agrees to make repairs and replacements. It contains the usual clauses for the landlord's right of reentry in case the tenant shall fail to perform "any of the covenants, terms, provisions, conditions or agreements contained in this lease" and it secures to the landlord the right to collect any existing deficiency existing at the time of reentry and the difference between the fair rental value for the remainder of the term and the rent named in the lease.

Clause 16 of the lease provides, as follows:

The Landlord hereby acknowledges that the Tenant has this day deposited with it the sum of one hundred thousand dollars ($100,000.00) and the Tenant agrees that it will deposit with the Landlord on or before January 10, 1947 the further sum of two hundred thousand dollars ($200,000.00), which said total

deposit of three hundred thousand dollars ($300,000.00) shall be held as security for the faithful performance of all of the covenants, conditions and agreements in this lease set forth and contained on the .part of the Tenant to be fulfilled, kept, observed and performed. If the Tenant shall fail, refuse or neglect to deposit with the Landlord said sum of two hundred thousand dollars ($200,000.00) on or before January 10, 1947 as herein provided, this lease shall, at the option of the Landlord, be null and void and the Landlord shall be entitled to keep and retain said deposit of one hundred thousand dollars ($100,000.00) as liquidated damages. It is hereby understood and agreed that the Landlord shall always have the right to apply said deposit or the part or portion thereof not previously applied, or from time to time, such one or more parts or portions thereof to the curing of any default that may then exist, without prejudice to any other remedy or remedies which the Landlord may have on account thereof. If the Tenant shall faithfully fulfill, keep, perform and observe all of the covenants, conditions and agreements in this lease set forth and contained on the part of the Tenant to be fulfilled, kept, performed and observed, the deposit or the part or portion thereof not previously applied, shall be returned to the Tenant immediately upon the expiration of this lease or any extension or renewal thereof, provided the Tenant has vacated the demised premises and surrendered possession thereof to the Landlord at the expiration of said term or any extension or renewal thereof as provided herein. * * * The Landlord shall not be obliged to hold said deposit as a separate fund, but on the contrary may use the said deposit for its own purposes and commingle the same with its other funds, and the Landlord shall not be liable to the Tenant for any interest thereon or on any part or portion thereof.

On January 16, 1947, after the tenant was in possession under the lease, the parties to the lease indenture executed an amendment to the lease of December 20, amending the rent paying clause to provide for an annual rental of $250,000 for the first 5 years, $275,000 for the next 5 years, and $310,000 for the balance of the term and the 7 year extension providing the tenant exercised the option to extend. The amendment also changed the first two sentences of clause 16 to read, as follows:

16. The Landlord hereby acknowledges that the Tenant has deposited with it the sum of two hundred fifty thousand dollars ($250,000.00) which, together with the further deposits (hereinafter collectively referred to as "deposit") to be made as provided hereunder, shall be held as security for the faithful performance of all of the covenants, conditions and agreements in this lease set forth and contained on the part of the Tenant to be fulfilled, kept, observed and performed. The Tenant agrees that on or before January 1, 1952 it will deposit with the Landlord the further sum of twenty-five thousand dollars ($25,000.00) and on or before January 1, 1957 it will deposit with the Landlord the further sum of thirty-five thousand dollars ($35,000.00).

On September 14, 1949, the parties to the lease indenture executed another agreement which provided for the earlier termination of the original lease. The preamble of this instrument recites, in part:

WHEREAS the Landlord did let unto the Tenant under an indenture of lease dated December 20, 1946 a certain parcel of land in the City of Boston, County of Suffolk Commonwealth of Massachusetts, with the building thereon, known

as the Bradford Hotel, numbered 275 Tremont Street, and more particularly described therein, for the term commencing at five p. m. on the first day of January, 1947 and ending at five p. m. on the first day of January,, 1982, unless sooner terminated or extended by the exercise of an option, all as provided in said lease, * * * and

WHEREAS the Tenant desires to terminate and end said lease and to relieve itself of any further obligations thereunder and to voluntarily surrender its possession of the demised premises under said lease on the effective date hereinafter specified and the foregoing is acceptable to the Landlord upon the terms, provisions and conditions which are hereinafter recited, * * *

Paragraph 1 of the agreement goes on to provide the tenant will surrender and deliver up possession of the leased premises "at five p. m. on the third day of January, 1950 * * * and it is agreed that thereupon said lease shall terminate and end, the rent for the month of January, 1950 shall be apportioned, and all further rights and obligations of the parties hereto under said lease shall cease and terminate except as hereinafter provided in this agreement."

Clause 6 of this agreement is, as follows:

In accordance with the terms of said lease, as amended by said indenture dated January 16, 1947, the Tenant deposited with the Landlord the sum of Two hundred fifty thousand dollars ($250,000) as security for the faithful performance by it of all covenants, conditions and agreements in said lease set forth and contained, on the part of the Tenant to be fulfilled, kept, observed and performed. With respect to said deposit, the Tenant releases and discharges the Landlord of and from the obligation to repay or return to the Tenant a portion thereof; viz., One hundred eighty-five thousand dollars ($185,000), and the Landlord agrees to repay or return to the Tenant the balance thereof, viz., Sixty-five thousand dollars ($65,000) as provided in paragraph 7 hereof.

Clause 7 of this agreement makes provision for the payment of the $65,000 "Provided the Tenant has surrendered possession of the demised premises to the Landlord as set forth in paragraph 1" and has kept the other provisions and conditions contained in this agreement. The clause makes provision for the payment of the $65,000 by paying $25,000 simultaneously with the surrender of possession and the balance by a series of notes, all payable within 12 months after January 1950.

The agreement of September 14, 1949, was carried out and petitioner reported income of $52,735.73 on its return for its fiscal year ended August 31, 1950, which sum was the present value on January 3, 1950, of the sum of $185,000 due on January 1, 1982, discounted at the rate of 4 per cent. The petitioner arrived at this value by using table B of Regulations 108, section 86.19 (g), which pertains to the valuation for gift tax purposes of life estates, terms for years, remainders, and reversions created prior to January 1, 1952. The respondent determined the entire sum of $185,000 was ordinary income in petitioner's 1950 taxable year.

Petitioner's argument that it only realized income in 1950 to the extent of the commuted value of the obligation due in 1982, starts with the proposition that it had the right to retain the deposit until 1982. Petitioner then goes to the authorities holding generally that the value of the release of a debt not yet due is less than the value of the release of a debt presently payable, and it relies upon them for the contention that it had the right to use the commuted value in 1950 of a debt of $185,000 due in 1982. Petitioner merely used the 4 per cent table to determine the commuted value, because the table is in the Commissioner's regulations and, under petitioner's theory, it seemed an adequate way to determine the present value on January 3, 1950, of $185,000 due on January 1, 1982, but petitioner agrees in the stipulation to abide by a rate other than 4 per cent if this Court should find another rate applicable. From the foregoing, it will be seen petitioner's basic argument is that its obligation on January 3, 1950 (the date when the lease was terminated by mutual consent of petitioner and the lessee), was to pay to the lessee $185,000 without interest on January 1, 1982 (the date of the expiration of the original lease).

In support of its argument that petitioner had the right to retain the deposit until January 1982, petitioner points to the language of the lease which, in clause 16, states the obligation to repay the deposit shall be "immediately upon the expiration of this lease or any extension or renewal thereof." The argument is that the expiration of the lease is something different than the termination thereof and therefore petitioner's right to retain the deposit would continue until January 1982, even though the lease was earlier terminated. Webster's New International Dictionary defines "expiration" as "termination" or "end." Petitioner cites *Petition of Prime*, 335 Pa. 218, 6 A. 2d 530, and *Farnum* v. *Platt*, 25 Mass. 339, and other cases for the proposition that there is an inherent distinction between the words "expiration" and "termination" as used in leases. We have examined the cited cases and do not believe they are authority for such a distinction.

Petitioner cites no case where it was ever held a landlord was entitled to retain a nondefaulting tenant's deposit as against the tenant's claim for its return made after the lease was terminated. It is the well-established rule of landlord and tenant law that a deposit made by the tenant as security for promised performance of the covenants of a lease can be retained by the landlord only as long as the relationship of landlord and tenant continues. *Sutton* v. *Goodman*, 194 Mass. 389, 80 N. E. 608; *Fields Holding Co.* v. *Chanbrook Realty Co.*, 285 N. Y. S. 182; *Kane* v. *Dunn*, 118 N. E. 2d 66 (Ill.); *Berghoff* v. *Koblitz*, 258 P. 2d 1059 (Calif.); *Hanley* v. *General Petroleum Corporation*, 290

Pac. 496 (Calif.); *Burnstine v. Margulies,* 87 A. 2d 37 (N. J.); *Vailsburg Amusement Co. v. Criterion Inv. Co.,* 156 Atl. 114 (N. J.); *Connecticut Land & Mortgage Co. v. Lesser, et al.,* 72 A. 2d 805 (Conn.); *Thibault v. Frechette,* 62 A. 2d 863 (Conn.); *Richman v. Joray Corp.,* 183 F. 2d 667; *New Eureka Amusement Co. v. Rosinsky,* 191 Atl. 412 (Pa.); *Stern v. Green,* 221 Pac. 601 (Wash.); 1 Underhill, Landlord and Tenant, p. 586.

In *Fields Holding Co. v. Chanbrook Realty Co., supra,* there was a deposit by the lessee with the lessor of $50,000 for the faithful performance by the tenant of his covenants in the lease and there was the further clause " 'that no action nor proceedings of any kind may nor shall be instituted, begun or carried on by the tenant or by any one claiming under or through the tenant in relation to said moneys so deposited or any part thereof, until one month after the expiration of the full term of said lease as originally made and any renewal or renewals thereof * * *.' "

The tenant was dispossessed before the expiration of the end of the leasehold period and it was held the clause was no bar to recovery of his deposit after the landlord lost all interest in the premises. There, as here, the argument was made that the landlord could retain the deposit until the expiration date of the lease even though it was earlier terminated. The opinion disposes of this argument in the following language:

The cases are numerous in this state which have held that, when the possibility of claims against the security has ceased, the former tenant may require the return of the security. [Citations]

The clauses of the present lease read as a whole make it certain that the deposit is not to be retained as a penalty. * * * The need for the retention of the deposit as security has disappeared. The clause prohibiting suit until one month after the expiration of the term was intended merely to protect the landlord against demand for the return of the deposit until he had an opportunity to ascertain and determine the amount of his damages. It manifestly has no connection with the situation in which the landlord can make no further claims against the security. * * *

In *Kane v. Dunn, supra,* the tenant who had made a faithful performance deposit died and the court found the evidence supported a finding that the administratrix of the tenant's estate and the landlord had mutualy agreed to surrender and cancel the written lease and to re-let the premises to administratrix individually. It was held that the administratrix was entitled to a return of the deposit made by the deceased.

In *Hanley v. General Petroleum Corporation, supra,* it is held: "As the lease had been rescinded by mutual consent, the plaintiff [tenant] was entitled to the return of his deposit."

In *Burnstine v. Margulies, supra,* the tenant deposited $1,000 as security for the rent and performance by the tenant of the other cov-

enants of the lease and the lease further provided the security was to be held by " 'the landlord until the termination of this lease, to wit, the 31st day of August, 1956, irrespective of the fact that the said lease may have been terminated prior thereto.' " The court construed this clause to mean "that the termination of the lease prior to August 31, 1956, shall not give the tenant a right to an immediate return of the money, if the termination was brought about by his own default." The opinion states there was evidence tenant's eviction was caused by the landlord's wrongful act (failure to restore after a fire), and the landlord later sold the premises. The opinion holds the tenant could recover the deposit, pointing out the landlord could have no claim for damage or rent against which the deposit could be applied since "the relation of landlord and tenant terminated in the fall of 1949, or the ensuing winter. The landlord could not possibly sustain any loss or damages after he sold the premises, free of the tenancy in September 1950."

In *Vailsburg Amusement Co.* v. *Criterion Inv. Co., supra,* the court held: "the landlord was entitled to retain the possession of the deposit at least until the end of the term specified in the lease, or until the lease was earlier terminated by the consent of the parties, or by operation of law:"

In *Thibault* v. *Frechette, supra,* the landlord, Taylor, sold the premises "subject to the terms of said lease" but retained the deposit the tenant had made at the time the lease was made. The tenant and the purchaser terminated the lease by mutual consent and the tenant sued Taylor for the return of the deposit. The opinion states: "it is difficult to perceive either legal or equitable reason for sustaining the claim of the defendant Taylor that she should not be ordered to repay this deposit, and her counsel have cited no authority which affords support for such a contention." The court held the tenant entitled to recovery, announcing the rule to be:

Where such a deposit is made by a tenant for security, the lessor's right of retention exists as long as the relation of landlord and tenant continues and until the termination of such relation and consequent cessation of the liabilities which the deposit was intended to secure, at which time the landlord is bound to return the deposit or security, or account therefor. [Citations]

In 1 Underhill, Landlord and Tenant, section 370, it is stated:

A tenant who has paid all rent due and who has properly performed all the covenants and conditions of the lease on his part is entitled to have his deposit returned and may sue and recover the same upon implied contract or upon the principle of a conversion of the same by the landlord after a demand and refusal to pay. This he may do as soon as the lease is terminated, whether by the natural expiration of the term by the efflux of time or by a surrender or a rescission. * * *

Applying the rule of the foregoing authorities to the instant case means petitioner's right to retain the deposit would not continue until

January 1, 1982. It would continue as long as the relationship of landlord and tenant continued or, in other words, until the liabilities which the deposit was intended to secure, ceased. The written agreement of September 14, 1949, was really no more than a second amendment to the original lease, providing, amongst other things, a new termination date to stand instead of "the first day of January, 1982," the termination date fixed in the original lease. The new termination date fixed by the September 14, 1949, agreement was January 3, 1950, when it was agreed the "lease shall terminate and end * * * and all further rights and obligations of the parties * * * shall cease and terminate." The agreement in effect recognized that the end of the tenant's obligations under the lease would give rise to the right of the tenant to demand the immediate return of the security deposited for the faithful performance of those obligations. The agreement spelled out what those rights would be. If the agreement of September 14, 1949, had been silent as to the amount and duty to repay, then, under all of the authorities, petitioner landlord would have had a present duty and obligation to immediately repay the full deposit on January 3, 1950, to the nondefaulting tenant. When, by the terms of the September 14, 1949, agreement, the tenant released petitioner from the duty and obligation to repay $185,000 of the deposit, it canceled an obligation immediately payable and petitioner realized income on January 3, 1950, in the sum of $185,000.

The respondent's determination of the deficiency was correct. Since we hold the petitioner had a present obligation to repay and therefore realized income to the extent of the $185,000 of the deposit it was allowed to retain, we do not reach other questions in the case, such as whether the commuted value of the obligation was correctly figured by petitioner.

We are aware that *Warren Service Corporation* v. *Commissioner*, 110 F. 2d 723, reversing 39 B. T. A. 856, holds contrary to our conclusion in this case. In our view the court which decided the *Warren Service Corporation* case failed to take into consideration the fundamental rule of landlord and tenant law that the landlord's duty to repay the deposit upon mutual cancellation of the lease is a present obligation. With all due respect for the tribunal which made that ruling, we find ourselves unable to follow it.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

MURDOCK and RAUM, *JJ.*, concur in the result.

---

KERN, *Judge*, dissenting: The majority opinion neatly solves the very complex problems presented in this case by (1) holding that the obligation of petitioner to repay to its tenant the deposit of $250,000

without interest in 1982 [1] became an obligation presently due at the time of its cancellation by virtue of the agreement of September 14, 1949, terminating the lease in 1950, which was the same agreement under which petitioner was released from the obligation to repay $185,000 in 1982, and by (2) refusing to follow the case of *Warren Service Corporation* v. *Commissioner*, 110 F. 2d 723, in which the Court of Appeals for the Second Circuit reached a contrary result on practically the same state of facts, its refusal being justified on the ground that the Court of Appeals had in that case "failed to take into consideration the fundamental rule of landlord and tenant law that the landlord's duty to repay the deposit upon mutual cancellation of the lease is a present obligation." Since I am in disagreement with this solution, neat though it be, and the reasoning by which it is reached, I feel constrained to file this dissent.

Before setting forth my views which are in conflict with the reasoning in the majority opinion, it may be proper to state that in my judgment the value on September 14, 1949, as of January 3, 1950, of the obligation of petitioner to return $185,000 of the security deposit upon the expiration of the lease subject to the possible termination of the lease earlier than January 1, 1982, by fire, condemnation, or otherwise, can and should be determined, that on the entire record this value was $75,000, and this amount was properly includible in petitioner's income for the taxable year.

The fundamental fallacy in the majority opinion lies in its disregard of the fact that the cancellation of petitioner's obligation to repay without interest $185,000 of the deposit in 1982 was accomplished simultaneously with the acceleration of the termination of the lease and by the same agreement of September 14, 1949. We are not aware of the motives or background leading to the agreement by which the lease was to be terminated in 1950. Prior to the execution of this agreement, petitioner (the lessor), in addition to having the right under the lease to receive the rents provided for therein, had the right to use without interest during the term of the lease [2] the sum of $250,000 deposited with it as security. In bargaining for the cancellation of the lease it would be unlikely that the lessor would agree to any cancellation without first reaching an agreement with regard to its then future (and far distant future) obligation to repay this deposit to the lessee. In the instant case it is apparent that before the lease was canceled and as a condition to the agreement of termination the

---

[1] Subject to some acceleration upon the occurrence of certain contingencies—a consideration which is not pertinent to the reasoning of the majority opinion.

[2] Subject to being curtailed by conditions subsequent having to do with eminent domain and fire.

parties had also reached an agreement on the equally important question of the amount of petitioner's future obligation to repay to the lessee the security deposit which should also be canceled. The agreement of September 14, 1949 (executed prior to the effective date for the termination of the lease in 1950), expressly provided for the cancellation of petitioner's obligation to repay to the lessee $185,000 of the deposit and was executed at a time when this obligation was a future obligation.[3] The majority opinion on this crucial point would have validity if there had been no agreement between the parties relating to the cancellation of the obligation to repay the security deposit prior to or contemporaneously with the agreement of September 14, 1949, and later, after the termination of the lease, there had been a cancellation of the obligation. At that time and under those conditions the cancellation of the obligation would be the cancellation of a present obligation. However, those are not the facts of the instant case. Here, unlike the cases cited in the majority opinion, the landlord did not stand by and permit his future obligation to repay the deposit to be tacitly converted into a present obligation by the termination of the lease before its expiration without reference to the repayment of the deposit. In the negotiations leading up to the agreement of September 14, 1949, and in the agreement itself, the parties to the lease were concerned not only with the termination of the relation of landlord and tenant but also with the extent of the cancellation, if any, of the landlord's obligation to repay the deposit to the tenant. It should be emphasized again that prior to the agreement of September 14, 1949, petitioner had the valuable right to use without interest the deposit of $250,000 until 1982 (subject to being curtailed by conditions subsequent), and that petitioner would naturally be concerned with the settlement of his rights and/or obligations with regard to this deposit prior to or contemporaneously with a termination of the lease before its expiration, since the termination, as the majority opinion holds, standing alone would result in the *entire* amount of the deposit being immediately repayable to the lessee. Therefore, it was carefully provided in the same instrument which provided for the termination of the lease in 1950 that the tenant released and discharged the landlord from the obligation to repay or return to the tenant $185,000 of the deposit, *which, at the time the agreement was executed, was an obligation to repay in 1982.* Therefore, at the time of the cancellation of petitioner's obligation this obligation was a future obligation to repay a sum of money without interest.

---

[3] It is significant that the amount of the deposit which should be repaid to the lessee in 1950 ($65,000) does not differ greatly from the present value in that year of an obligation to repay $250,000 in 1982.

In all essential respects the case of *Warren Service Corporation* v. *Commissioner*, *supra*, unlike the cases cited in the majority opinion, is identical with the instant case. In both cases the termination of the lease before its expiration and the cancellation of the landlord's obligation to repay without interest part of a deposit to the lessee on the expiration of the lease were accomplished simultaneously and by the same instrument.

In the *Warren Service* case, the taxpayer was the lessor of business property under a lease executed in August 1926, which required the lessee to deposit $125,000 with the lessor as security for the performance by the lessee of its obligations thereunder. The lease provided that the lessor was to have the unrestricted use, interest free, of the $125,000 which was to be repaid on August 1, 1941, when the lease expired if the lessee had faithfully performed its obligations, or if it had defaulted, if such default had been cured. The lease was canceled by agreement on May 1, 1933, and by the same agreement the lessee released its interest in the $125,000 deposit. The taxpayer-lessor included in its 1933 income only $85,000, the present worth on December 31, 1933, of an obligation to pay $125,000 on August 1, 1941. The Commissioner determined that the entire $125,000 was income in 1933. This Court sustained the Commissioner's determination but the decision was reversed by the Court of Appeals for the Second Circuit. That court stated in its opinion, at page 725:

The value of a release of an obligation to pay $125,000 in 1941, without interest, is obviously less than the value of the release of a debt for like amount presently due, or of an obligation to pay the sum in 1941 with interest. See Chesapeake & Ohio R. Co. v. Kelly, 241 U. S. 485, 489, 36 S. Ct. 630, 632, 60 L. Ed. 1117, L. R. A. 1917F, 367, where it is said: "It is self-evident that a given sum of money in hand is worth more than the like sum of money payable in the future." See also Hollwedel v. Duffy, Mott Co., 263 N. Y. 95, 188 N. E. 266, 90 A. L. R. 1312. The present case is to be distinguished from a situation where the deposit of money as collateral security is held in trust by the lessor without the privilege of using it. It must also be differentiated from a situation where the lessor is to pay the lessee interest on the deposited sum, as in the case relied upon by the Board. Commissioner v. Langwell Real Estate Corp., 7 Cir., 47 F. 2d 841. In such a case the present worth of a release from an obligation to pay $125,000 in eight years is presumably the face amount of the obligation; the value to the lessor of the use of the money in the interim is offset by the obligation to pay interest during the same period. But in the case at bar the lessor was to have the free use of the money until 1941. * * *

The case was remanded to this Court to determine the value in 1933 of an obligation to pay $125,000 on August 1, 1941, without interest. It is obvious, and the majority opinion so recognizes, that the Court of Appeals in this case considered the release of the obligation to repay the deposit to the lessee as a release of a future obligation to repay money without interest which was to be valued as such. For the

reasons above stated, it is my opinion that the Court of Appeals was correct in this holding and did not ignore any "fundamental rule of landlord and tenant law" in holding that the release to a landlord of an obligation to repay a deposit without interest to a lessee on the expiration of a lease was the release of a future obligation if the release was expressly accomplished simultaneously with and as a part of the agreement by which the lease was terminated prior to its expiration.

In *F. W. Kellogg*, 42 B. T. A. 64, we held in an Opinion reviewed by the Board and without dissent that "the value * * * of the cancellation of a debt not yet due is less than the value of a cancellation of a debt presently payable, if no interest is charged on the obligation to pay." As authority for this proposition we cited and relied upon the "recent case," *Warren Service Corporation* v. *Commissioner, supra,* and quoted with approval a part of the opinion of the Court of Appeals already quoted herein. We also held that if the present value to the payee of an account receivable payable in the future was less than its face amount, "then it would follow that the present value * * * to [the obligor] of the cancellation of the same obligation would be the same amount," and again cited the *Warren Service Corporation* case.

Thus, the Court of Appeals for the Second Circuit has held that, under facts similar to those of the instant case, the release of the obligation to repay the deposit was the release of a future obligation, no opinion of a Court of Appeals or opinion of this Court since the *Warren Service Corporation* opinion has held to the contrary, and in the *Kellogg* case we held without dissent in an Opinion reviewed by the Board that the present value of the cancellation of an obligation to pay in the future a sum of money without interest would be less than the face amount of that obligation and in that Opinion we twice cited the opinion of the Court of Appeals in the *Warren Service Corporation* case as authority for our holding.

In this dissent I have confined myself to an explication of my difference of opinion with the reasoning of the majority opinion, considering it unnecessary to take up in detail the contentions of the parties on questions which arise if the proposition upon which the majority base their opinion is rejected, i. e., that the cancellation by the agreement of September 14, 1949, of petitioner's obligation to repay a part of the deposit, repayable prior to the execution of that agreement, in 1982, was the cancellation of a present obligation. However, as I have already indicated, it would be my judgment that these troublesome questions should be decided in favor of the petitioner, except that the valuation of the canceled obligation should be increased to $75,000.